UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

| | |
|---|---|
| BENJAMIN ANDREWS, ESQ.<br>ADMINSTRATOR OF THE ESTATE<br>OF DOUGLAS SPARKS<br><br>    Plaintiff,<br><br>v.<br><br>DOROTHY JONES, LPN<br><br><br>    Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)   Case No. 3:22-cv-726<br>)<br>)<br>)<br>)<br>)<br>) |

## COMPLAINT

Plaintiff Benjamin Andrews ("Plaintiff"), by counsel, in his capacity as Administrator of the Estate of Douglas Sparks, hereby files his Complaint seeking judgment against Dorothy Jones, LPN ("Nurse Jones"). In support of his claims against Nurse Jones, Plaintiff respectfully alleges the following:

### JURISDICTION AND VENUE

1. This Court is vested with subject matter jurisdiction over Mr. Andrews' 42 U.S.C. § 1983 claim pursuant to 28 U.S.C. §§ 1331, 1343(a)(3), (4). The Court is vested with supplemental jurisdiction over Mr. Andrews' state law claim pursuant to 28 U.S.C. § 1367.

2. Venue is proper in the Richmond Division of the Eastern District of Virginia by virtue of the consent of the litigants.

### PARTIES

3. Plaintiff is the duly appointed administrator of the Estate of Douglas Sparks ("Mr. Sparks").

1

4. Nurse Jones is an LPN who, at all times relevant to this case, was responsible for providing medical care to the detainees and inmates housed at Eastern Shore Regional Jail ("the Jail"), located at 5245 Hornes St, Eastville, Virginia 23347. Prior to September 5, 2019, Nurse Jones had become aware of the LPN scope of practice requirements articulated in Va. Code Ann. § 54.1-3000, 18 Va. Admin. Code § 90-19-70, 18 Va. Admin. Code § 90-19-230, and 6 Va. Admin. Code § 15-40-440

## FACTUAL ALLEGATIONS

5. On September 5, 2019, Mr. Sparks was placed in the custody of the Eastern Shore Regional Jail ("ESRJ"). ESRJ is not a municipal corporation.

6. On October 3, 2019, Mr. Sparks reported to another inmate on his block, Jim Powell ("Mr. Powell"), that he had a stomach ache. Mr. Powell advised Mr. Sparks that he also had a stomach ache. The concurrence of symptoms led both inmates to believe that their symptoms were related to the food they had eaten at ESRJ.

7. On October 4, 2019, Mr. Sparks' symptoms had worsened. He reported to an ESRJ guard that his stomach was burning and that he was having difficulty breathing. The ESRJ guard told him to complete a medical request form, which he did.

8. After Mr. Sparks completed the medical request form, an ESRJ guard escorted Mr. Sparks to the ESRJ's medical department at approximately 1315 the following day (i.e., October 5, 2019).

9. LPN Jones was on shift at the time and met with Mr. Sparks. Mr. Sparks reported to LPN Jones that he had been suffering from stomach pain for several days, and that he was unable to eat anything. Mr. Sparks complained of a burning sensation around the upper-mid stomach that extended to his left side. Mr. Sparks reported to LPN Jones that the burning sensation had stopped,

but that he was having difficulty breathing. His vital signs during the visit were as follows: (a) temperature – 98.2 °F; (b) pulse – 119 bpm; (c) respiratory rate – 18 bpm; (d) blood pressure – 102/73; and (e) O2 saturation – 96%.

10. LPN Jones listened to Mr. Sparks' lungs and her assessment was that his lungs sounded clear. Though being unqualified to make a medical diagnosis, she suggested that Mr. Sparks had a pulled muscle or that he was experiencing heartburn. Mr. Sparks stated he did not believe his symptoms were attributable to a pulled muscle or heartburn.

11. LPN Jones did not seek any guidance from a provider regarding Mr. Sparks' presentation. Rather, she simply told Mr. Sparks that "nothing was wrong" with him and had Mr. Sparks returned to his cell.

12. Later that same day, Mr. Sparks went back to LPN Jones and asked to see the ESRJ physician. LPN Jones put Mr. Sparks on a list to be seen by the doctor 3 days later—i.e., October 8, 2019.

13. On the morning of October 6, 2019, at approximately 0615, Mr. Sparks told Mr. Powell that he needed to see the nurse. Mr. Sparks completed a medical request form which stated "I cannot breath[e] I am light headed and am going to pass out."

14. At that time, Mr. Powell observed that Mr. Sparks was "struggling to breathe, said his chest hurt, had an erratic pulse, and nausea." Mr. Powell alerted ESRJ staff that Mr. Sparks needed medical attention.

15. LPN Jones was on the same block as Mr. Sparks at approximately 0630. Mr. Sparks told LPN Jones that he was unable to breathe. As LPN Jones headed back to the medical department, an ESRJ deputy advised LPN Jones that Mr. Sparks was still complaining and wanted to be seen by medical.

16. ESRJ staff reported to Mr. Sparks' location and escorted Mr. Sparks to the medical department by wheelchair at 0652.

17. Mr. Sparks again met with LPN Jones and reported to LPN Jones that he was unable to breathe and experiencing upper rib pain. LPN Jones took Mr. Sparks vital signs, which were as follows: (a) temperature – 97 °F; (b) pulse – 114 bpm; (c) respiratory rate – 18 bpm; (d) blood pressure – 97/82; and (e) O2 saturation – 99%.

18. Nevertheless, LPN Jones did not contact a physician for guidance or provide Mr. Sparks any medical care. She simply made the decision herself not to send Mr. Sparks to the hospital and instead gave Mr. Sparks some ibuprofen and sent him back to his cell.

19. Later that same day, at approximately 1230, Mr. Sparks again reported to LPN Jones that he was suffering from shortness of breath and that he also felt faint. Mr. Sparks' condition had deteriorated to the point he could not walk down a set of stairs. Mr. Sparks relayed to LPN Jones that he had been unable to tolerate food for 2-3 days and could not tolerate fluids. He also reported that he felt nauseated when trying to inhale.

20. LPN Jones finally took action to have Mr. Sparks receive emergency medical care. She completed an off-site consultation form for Mr. Sparks to go to the ER, but designated the request as being "routine" rather than "urgent." As a result of doing so, Mr. Sparks had to wait for deputies to be ready to transport him to the hospital rather than an ambulance being called to come get him.

21. Eventually, at 1332, ESRJ deputies transported Mr. Sparks to Riverside Shore Memorial Hospital ("RSMH").

22. Medical staff at RSMH determined that Mr. Sparks was suffering from a myocardial infarction (i.e., a heart attack) and that he was in cardiogenic shock.

23. Medical staff at RSMH arranged for Mr. Sparks to be airlifted to Sentara Norfolk General Hospital (SNGH), where he died 9 ½ hours after his admission.

24. An autopsy conducted after Mr. Sparks' death determined that his cause of death was "giant cell myocarditis" and that coronary artery disease also contributed to his death.

### COUNT I – SIMPLE AND GROSS NEGLIGENCE AND SIMPLE AND GROSS NEGLIGENCE PER SE (WRONGFUL DEATH)

25. Plaintiff incorporates the foregoing paragraphs of this pleading as if fully stated herein.

26. As a medical provider, Nurse Jones owed Mr. Sparks a duty of care under the Virginia Medical Malpractice Act to treat him in conformity with the standard of care.

27. Nurse Jones breached that duty by unduly delaying in having Mr. Sparks transported to a hospital upon receiving his complaints revealing that he was at risk of serious injury and even death, and making medical decisions concerning the treatment of Mr. Sparks' medical needs beyond her scope of practice. Nurse Jones' conduct in this regard was knowingly reckless, and her choices disregarded the risk of harm that she knew was likely to follow as a consequence of her decision to delay hospital care for Mr. Sparks and make treatment decisions outside of her scope of practice.

28. Additionally, as an LPN, Nurse Jones' conduct violated the scope of practice provisions set forth in Va. Code Ann. § 54.1-3000, 18 Va. Admin. Code § 90-19-70, 18 Va. Admin. Code § 90-19-230, and 6 Va. Admin. Code § 15-40-440. Those provisions were enacted to protect public safety. Moreover, Mr. Sparks, as a patient and/or inmate at a jail, was an intended beneficiary of those enactments. Additionally, those provisions were specifically intended to prevent the types of injuries sustained here—i.e., poor medical outcomes secondary to nurses acting beyond the appropriate scope of practice.

29. As a direct and proximate result of the Nurse Jones' various breaches of the standard of care and legislative duties as set forth above, Mr. Sparks suffered several cardiac events which ultimately claimed his life on October 7, 2019.

### COUNT II – EIGHTH AMENDMENT VIOLATION PURSUANT TO 42 U.S.C. § 1983

30. Plaintiff incorporates the foregoing allegations of this pleading as if fully set forth herein.

31. As an inmate at the Jail, the Eighth Amendment of the United States Constitution afforded Mr. Sparks the right to receive adequate medical care for his objectively serious medical needs.[1]

32. As demonstrated by the repeated efforts by ESRJ staff to secure medical care for Mr. Sparks, Mr. Sparks' worsening cardiac dysfunction and/or deteriorating medical condition constituted an objectively serious medical need because the need for medical care to treat those conditions was so obvious that even a layperson would have recognized as much.

33. By virtue of receiving repeated reports of Mr. Sparks' symptoms and complaints suggesting the presence of cardiac dysfunction and/or a life threatening emergency, Nurse Sparks was actually aware of Mr. Sparks' objectively serious medical need and was aware that delaying hospital care in connection with the same would create a substantial risk that Mr. Sparks would suffer serious harm, and even death.

34. Nevertheless, Nurse Jones acted with deliberate indifference to Mr. Sparks' objectively serious medical need by:

    a. Unnecessarily delaying the provision of hospital care; and

---

[1] In the alternative, to the extent Mr. Sparks was a pretrial detainee at the time of the events alleged herein, this right would arise under the Fourteenth Amendment.

    b. Making treatment decisions concerning Mr. Sparks' medical care beyond her scope of practice.

35. As a direct and proximate result of Nurse Jones' deliberate indifference as set forth above, Mr. Sparks suffered several cardiac events which ultimately claimed his life on October 7, 2019.

## DAMAGES

36. As a direct and proximate result of the tortious and unconstitutional conduct as articulated in Counts I-II supra, Mr. Sparks suffered substantial pre-death pain and suffering (both physical and mental). Additionally, the beneficiaries of Mr. Sparks' estate have suffered and will continue to suffer the following damages:

    a. Medical expenses;

    b. Funeral and burial expenses;

    c. Sorrow, mental anguish, and loss of solace;

    d. Loss of income and financial support;

    e. Loss of services, protection, care and assistance;

    f. Loss of care, comfort, companionship, guidance, kindly offices, and advice; and

    g. Other damages to be developed in discovery.

WHEREFORE, based upon the foregoing, Plaintiff demands judgment against Nurse Jones in the amount of TWO MILLION DOLLARS ($2,000,000.00) for compensatory damages, together with costs incurred in the pursuit of a just resolution of this matter, prejudgment and post-judgment interest, and attorneys' fees and all recoverable costs allowed by 42 U.S.C. § 1988, and punitive damages pursuant to all federal causes of action against Nurse Jones in the amount of ONE MILLION DOLLARS ($1,000,000.00).

Respectfully Submitted,

BENJAMIN ANDREWS, ESQ.
Administrator of the Estate of Douglas Sparks

_____/s/_____
Jonathan E. Halperin (VSB No. 32698)
Isaac A. McBeth (VSB No. 82400)
Halperin Law Center, LLC
4435 Waterfront Drive, Suite 100
Glen Allen, VA 23060
T: (804) 527-0100
F: (804) 597-0209
jonathan@hlc.law
isaac@hlc.law


Seth Carroll (VSB No. 74745)
Commonwealth Law Group
3311 West Broad Street
Richmond, Virginia 23230
(804) 999-9999
scarrollvj@hurtinva.com
*Counsel for Plaintiff*